# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 08-00084-TLM |
| JEFFREY S. OVERTON, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| BRADLEY GAMBLE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adv. No. 08-06033-TLM |
| ) | |
| JEFFREY S. OVERTON, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION
## ON MOTION FOR SUMMARY JUDGMENT
_____

**INTRODUCTION**

Plaintiff Bradley Gamble filed this adversary proceeding to obtain a determination as to the dischargeability of a debt owed by Debtor/Defendant Jeffrey Overton. Gamble's complaint alleges that the obligation at issue falls within § 523(a)(2)(A), § 523(a)(2)(B), § 523(a)(4), and § 523(a)(6).[1] Overton's

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

MEMORANDUM OF DECISION - 1

answer raised, *inter alia*, an affirmative defense that:

> The relief requested by Plaintiff should be denied and the Amended Complaint dismissed in its entirety as all of the issues alleged in the Amended Complaint have been litigated and therefore are barred by the doctrine of *res judicata*.

Adv. Doc. No. 8 at 6.

Overton thereafter filed a motion for summary judgment raising this issue. Adv. Doc. No. 12 ("Motion"). The Motion was heard and taken under advisement.

Following careful review, and for the reasons set forth below, the Court determines that the Motion will be granted in part and denied in part. An order upon this Decision will be entered by the Court.

## SUMMARY JUDGMENT STANDARD

The Ninth Circuit recently summarized:

> In adversary proceedings before the bankruptcy court, the familiar summary judgment standard established in Federal Rule of Civil Procedure 56 applies. *See* Fed. R. Bankr. P. 7056; *North Slope Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1227 (9th Cir. 1997). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden of showing the absence of a

MEMORANDUM OF DECISION - 2

> genuine issue of material fact. *Id.* at 256-57, 106 S.Ct. 2505. The court must view all the evidence in the light most favorable to the nonmoving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).
>
> In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).
>
> A court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

*Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008).

**FACTS**

For the purposes of the Motion, the following facts are undisputed.

In July, 2005, Gamble brought suit against Overton in the U.S. District Court for the District of Wyoming. In this Wyoming federal litigation, Gamble asserted twenty-one separate causes of action against Overton in connection with a contract under which Overton's corporation, Natural Progression Builders, Inc. ("NPB"), was to remodel Gamble's home and construct an adjacent garage/guest house. Disputes arose, and the project was never completed.

MEMORANDUM OF DECISION - 3

Gamble's complaint asserted multiple counts, which were numbered[2] and titled by him as follows: (1) piercing of the corporate veil; (2) trust fund doctrine; (3) fraudulent conveyance; (4) fraud in the inducement; (5) fraud in the execution; (6) fraudulent concealment; (7) breach of fiduciary duties; (8) negligent misrepresentation; (9) negligent hiring, management and supervision; (10) joint venture/enterprise; (11) claim for civil conspiracy; (12) claim for accounting; (13) slander of title; (14) breach of contract; (15) intentional infliction of emotional distress; (16) negligent infliction of emotional distress; (17) Racketeer Influenced and Corrupt Organization (RICO) - wire fraud; (18) RICO - mail fraud; (19) RICO - attempt and conspiracy; (20) abuse of process; and (21) punitive damages.

The Wyoming federal court entered an order on November 8, 2007, on Overton's Fed. R. Civ. P. 12(b)(6) motion. *See* Overton Aff., Ex. B, Adv. Doc. No. 12, attach. 3 (the "November Order"). The November Order dismissed Counts (3), (4), (10), (11), (17), (18), (19), and (21) under Rule 12(b)(6) standards. It also granted summary judgment in favor of Overton on Counts (8), (13), (16), and (20).[3] The court's order also noted that Plaintiff conceded dismissal of Count (15).

---

[2] The Court converts the Roman numerals used by Gamble to Arabic for ease of reading.

[3] Under Fed. R. Civ. P. 12(d), to the extent materials outside the pleadings are offered and not excluded by the court on a Rule 12(b)(6) motion, the matter is treated as a summary judgment under Fed. R. Civ. P. 56, and the Wyoming District Court so recognized.

MEMORANDUM OF DECISION - 4

That left for trial only Counts (1), (2), (5), (6), (7), (9), (12), and (14). Trial occurred from November 27 through December 6, 2007. At the close of evidence, Overton moved for judgment as a matter of law, and the Wyoming federal court's order of December 13, 2007, granted that motion, dismissing Counts (5), (6), and (9). *See* Overton Aff., Ex. C, Adv. Doc. No. 12, attach. 3 (the "December Order"). The jury rendered a verdict against NPB/Overton on the basis of breach of the Gamble-NPB contract, awarding damages of $750,000.00. The Wyoming court ruled that piercing the corporate veil was appropriate because Overton should not benefit "from limited liability generated by a corporate form to which he did not adhere." December Order at 7. The verdict was thus effectively rendered on Counts (1) and (14). The court's December Order noted that the remaining Count (2) on the trust fund doctrine was effectively an alternative to piercing the corporate veil and any damages under that theory were necessarily incorporated in the contract damages awarded, thus any issue of liability under that theory need not be reached.[4]

Following the jury verdict and December Order, but before the Wyoming federal court ruled on other post-trial motions and entered a final judgment, Overton filed his petition for relief under chapter 7.

---

[4] In reviewing the December Order, it appears that while no specific ruling was made on Counts (7) and (12), those counts were subsumed in the jury verdict against Overton finding breach of contract and awarding contract damages.

MEMORANDUM OF DECISION - 5

## DISCUSSION AND DISPOSITION

### A. Issue preclusion is the relevant doctrine

As noted, Overton's answer raised an affirmative defense of *res judicata*. This is the name previously used for a doctrine now called "claim preclusion." Overton's Motion clarified that the question he actually presents is that of "issue preclusion" or what was previously characterized as "collateral estoppel."

In effect, Overton argues Gamble should be barred by the doctrine of issue preclusion from raising and litigating before this Court the issues in the instant complaint because Gamble raised the same issues in Wyoming federal court and had the same either (i) summarily dismissed by that court under Rule 12(b)(6), or (ii) dismissed under summary judgment standards, or (iii) dismissed on post-trial motions. In short, Overton claims Gamble had his day in court, and lost on all the fraud and other theories, and was left with only a simple contract damage claim.

Issue preclusion applies in § 523(a) dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279 (1991); *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir. 2003); *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824 (9th Cir. BAP 2006). The doctrine precludes a party from relitigating an issue he actually litigated and lost in a prior proceeding. *R.T.C. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999); *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 92 (9th Cir. BAP 2000). "Issue preclusion serves to protect litigants from

multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication by reducing the likelihood of inconsistent judgments." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).[5]

### 1. Which law applies on issue preclusion

The preclusive effect to be given a prior federal court judgment is a question of federal common law. *Taylor v. Sturgell*, __ U.S. __, 128 S. Ct. 2161, 2171 (2008); *Semtek Int'l Inc. v. Lockheed Martin Corp., et al.*, 531 U.S. 497, 508 (2001); *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872-79 (9th Cir. 2007). In determining the meaning of "federal common law," the Supreme Court in *Semtek* held that the claim-preclusive effect of a federal diversity judgment is determined by applying "the law that would be applied by state courts in the State in which the federal diversity court sits." 531 U.S. at 508. Unlike this case, *Semtek* involved claim preclusion rather than issue preclusion, and it thus does not instruct whether Wyoming or federal issue preclusion law applies here.[6] In regard to issue preclusion, however, both Wyoming courts and federal courts applying federal law follow the principles, elements and definitions articulated in the

---

[5] *See generally*, Klein, *et al*, Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 Amer. Bankr. L.J. 839 (2005) (hereafter "Klein").

[6] *See Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1207 (10th Cir. 2001) (recognizing this distinction and declining to decide whether issue preclusion should be evaluated using state law or federal law principles when the trial court was exercising diversity jurisdiction).

MEMORANDUM OF DECISION - 7

Restatement (Second) of Judgments (1982) (the "Restatement").[7] Given the congruence of Wyoming and federal issue preclusion law, the Court concludes the orders by the Wyoming federal court are subject to the same standard. Thus, under the applicable portion of the Restatement:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement § 27.

### B. Application to the issues presented to the Wyoming court

This case appears to present a classic situation for the use of issue preclusion. Gamble has already asserted – and lost – all of his many issues other than breach of contract and piercing NPB's corporate veil. This includes his multiple fraud contentions and allegations of willful and malicious injury. That he should be allowed to have a "second bite at the apple" and try such matters once again under the aegis of § 523(a) is inimical to the policies underlying the issue preclusion doctrine.

There are, however, two threshold matters which must be resolved in determining whether Gamble is barred from his attempt to relitigate the issues he previously tried and lost. The first is whether the absence of a final judgment

---

[7] *See, e.g.*, *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653 (10th Cir. 2006); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 326 (9th Cir. 1988); *Worman v. Carver*, 44 P.3d 82, 86 (Wyo. 2002); *Matter of Paternity of SDM*, 882 P.2d 1217 (Wyo. 1994).

MEMORANDUM OF DECISION - 8

entered by the Wyoming court bars this Court from applying issue preclusion. The second stems from the varying burdens of proof applicable to the issues before the Wyoming court and this Court.

### 1. Finality

Gamble notes the absence of a final judgment by the Wyoming court, but he does not advance this as a reason to deny the Motion. Overton contends the November Order is final for preclusion purposes, but relies on authorities involving claim preclusion, not issue preclusion.

Both issue preclusion and claim preclusion require a "final judgment." The issue here is whether the interlocutory November and December Orders by the Wyoming court are sufficiently "final" to bar the religitation of the issues previously determined.

The Restatement states that, for purposes of issue preclusion, a "final judgment" includes "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement § 13. To ascertain the "firmness" of a judgment, courts consider several factors, including whether the parties were fully heard, the court supported its decision with a reasoned opinion, and the decision was subject to appeal. *Id.*, comment g. Preclusion should be refused if the prior decision was tentative. *Id.*[8]

---

[8] The Ninth Circuit adopted this definition of "finality" in *Robi,* 838 F.2d at 326. While
(continued...)

MEMORANDUM OF DECISION - 9

The Court has reviewed carefully the November and December Orders of the Wyoming court. Both orders are supported by reasoned opinions containing thorough discussions of the issues presented. There is nothing in those Orders that suggests the court's rulings were tentative or in any way intended not to be accorded conclusive effect. This Court concludes the orders would be "sufficiently firm" under Wyoming or federal law to satisfy the "finality" requirement of issue preclusion.[9]

---

[8](...continued)
the Supreme Court of Wyoming has not expressly adopted this definition, it has held that a prior order was not final for issue preclusion purposes where "there [were] events occurring after the order which [were] necessarily determinative of the issue." *U.S. West Communications, Inc. v. Wyoming Pub. Serv. Comm'n*, 907 P.2d 343, 348 (Wyo. 1995). The Court finds the Wyoming court's articulation of "finality" consistent with that of the Restatement.

[9] The Restatement states:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> . . .
>
> (1) party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action[.]

Restatement § 28(1). Though the Wyoming court rulings are interlocutory orders and would not be appealable prior to entry of a final judgment, *see Smith v. Brito*, 173 P.3d 351, 353 (Wyo. 2007) (citing Wy. R. Civ. P. 54(b)), the Court concludes the exception in Restatement § 28(1) does not apply in this case. To hold otherwise would effectively make the entry of a formal "final judgment" a requisite for issue preclusion as to all interlocutory rulings, no matter how thoroughly reasoned and sufficiently firm. In other words, the exception of Restatement § 28(1) would swallow and negate the Restatement's § 13 general rule on issue preclusion and its definition of "final judgment."

MEMORANDUM OF DECISION - 10

### 2. Burdens of proof

"Collateral estoppel or issue preclusion is foreclosed when there are disparate burdens of proof in the state and bankruptcy forums." *Skull Valley Band of Goshute Indians v. Chivers (In re Chivers)*, 275 B.R. 606, 618 (Bankr. D. Utah 2002) (citing *Matosantos*, 245 F.3d at 1212 ("Collateral estoppel is . . . not appropriate when a party in a subsequent suit faces a less demanding burden of proof than the burden of proof in the prior litigation.")). Klein notes that "[E]xceptions to application of issue preclusion pertain when the policies of judicial economy and avoidance of inconsistent results are outweighed by other substantive policies." 79 Amer. Bankr. L.J. at 855. One such policy derives from the Restatement, which provides:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> . . .
>
> (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action[.]

Restatement § 28(4). *See also* 21A Fed. Proc., L. Ed § 51:223 (West 2008) ("Issue preclusion is not applicable when there is a change in the degree of persuasion required to prevail. Thus, the District Court will not apply issue preclusion when the party against whom preclusion is sought failed to carry the

MEMORANDUM OF DECISION - 11

burden of proof on an issue in a prior action which involved a different, and more rigorous, standard of proof than is to be applied to the later action.").

In bankruptcy cases, the burden of proof on § 523(a) causes of action is a preponderance of the evidence. *Grogan*, 498 U.S. at 286-91. The cause of action on the several fraud claims in the Wyoming litigation was, Overton concedes, subject to a "clear and convincing" evidentiary standard.

However clear this "burden of proof" caveat to the application of the doctrine of issue preclusion may be, the Court concludes it does not require an across-the-board denial of Overton's Motion. To properly evaluate the application of this caveat to the case at bar, the Court must consider carefully whether the Wyoming District Court's dismissal of the causes of action was based on a failure of evidence needed to meet the burden of proof (thus triggering application of the caveat) or was based on some other rationale or pleading defect.[10]

The comments of the Wyoming federal court are therefore key. This Court has read them carefully. There is no doubt that the Wyoming court found

---

[10] The caveat also is inapplicable if the burden of persuasion on an issue in the Wyoming litigation was the same preponderance of the evidence standard applicable in this adversary proceeding. The Wyoming court's ruling indicates that the clear and convincing evidence standard applied only to the fraud counts. *See*, *e.g.*, November Order at 10 (referencing Counts (3), (4), (5), (6), (17), (18), and (19)). It specifically noted negligent misrepresentation, Count (8), though similar to fraud, required only a preponderance. *Id.* at 17. The other counts subject to the November Order, Counts (10), (11), (13), (20), and (21), were dismissed for procedural or substantive defects not related to burden of proof.

MEMORANDUM OF DECISION - 12

Gamble's shotgun approach to the litigation deficient.[11]  Just how deficient, and the basis on which several causes were dismissed, is important.

### a.     Causes dismissed prior to trial

As noted, many of the claims were dismissed under the standards of Rule 12(b)(6).  The Wyoming federal court noted that under that Rule, it had to construe all well-pleaded factual allegations in the light most favorable to Gamble, but could dismiss a cause when "it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."  November Order at 2-3.[12]  It noted that judgment on the pleadings should not be granted unless the moving party, there Overton, demonstrated that no question of material fact remained to be resolved and that he was entitled to dismissal as a matter of law.  That standard, the court noted, meant that "dismissal is a legal determination that plaintiff can prove no set of facts that would entitle it to relief."  *Id.*

Under these analytical structures, then, the dismissal of Counts (3), (4),

---

[11] That court stated, among other things, that it "commends Plaintiff's ability to fit so many causes of action into one Complaint – especially those that do not come close to passing a smell test."  November Order at 16 n.3.  As noted, it ultimately rejected *all* Gamble's causes of action except breach of contract and Overton's personal liability for NPB's debt.

[12] The Wyoming court's articulated standard echoes that of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), a standard reconsidered and clarified in *Bell Atlantic Corp. v. Twomby*, 550 U.S. 544 (2007).  *Twomby* preceded by six months the Wyoming court's ruling.  Even so, a close reading of the decision makes clear that the standards announced in *Twomby* were met, even if not explicitly cited and applied.

MEMORANDUM OF DECISION - 13

(10), (11), (17), (18), (19), and (21) were on a basis *other* than application of a heavier burden of persuasion than the preponderance standard that applies in § 523(a) litigation. Because these causes were dismissed for more fundamental reasons, issue preclusion may apply to prevent the attempted relitigation of those issues actually decided.

The next step is to determine which of the present § 523(a) claims are precluded. Despite difficulties presented by Gamble's terse pleading, the Court concludes several contentions in the instant complaint are subject to issue preclusion, while others are not.

### i. Fraud in the inducement and § 523(a)(2)

The dismissed causes included Count (4) ("fraud in the inducement"). The Wyoming complaint makes adequately clear that this cause related to Overton's alleged representations prior to the time Gamble agreed to enter into the construction contract, representations that Gamble contended were knowingly false and made with the fraudulent intent that Gamble rely on them to his detriment. By dismissal of that count on Rule 12(b)(6) grounds, and not on the basis of burden of proof, *see* November Order at 10-13, all allegations in the instant adversary proceeding sounding in fraud and relating to conduct prior to the

execution of the contract are barred.[13]

These precluded issues include all § 523(a)(2)(A) claims predicated on pre-contract representations. The Court further determines that they also include any § 523(a)(2)(B) contentions *if* written financial statements regarding Overton's or NPB's financial condition were provided prior to April 28, 2000.[14]

The Wyoming court's dismissal of the "fraud in the inducement" count sweeps all pre-April 28, 2000 conduct, oral or written, within reach of the issue preclusion doctrine.

### ii.  Punitive damages and § 523(a)(6)

Count (21) ("punitive damages") alleges that Overton's actions were

---

[13] The instant adversary complaint alleges the date of the subject agreement is March 30, 2000. Adv. Doc. No. 5 (Amended Complaint) at ¶ 7. The Wyoming complaint alleges a "contract" of April 28, 2000. *See* Overton Aff., Ex. A at ¶ 13, Adv. Doc. No. 12, attach. 2. Both refer to the same AIA Standard Form of Agreement Between Owner and Contractor, which bears on page 1 an effective date of March 30, 2000. The reference to April 28, 2000 is apparently to the date of Gamble's signature on page 14. The Court determines that issue preclusion applies to representations prior to April 28, 2000.

[14] A § 523(a)(2)(B) cause of action is available only in connection with false statements in writing "respecting the debtor's or an insider's financial condition." *See* § 523(a)(2)(B)(ii). Such documents are commonly characterized as "false financial statements." *See*, *e.g.*, *Candland v. Ins. Co. of No. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996); *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1457 (9th Cir. 1992) (rejecting § 523(a)(2)(B) argument because documents did not purport to set forth debtor's net worth or overall financial condition, and considering matter solely under § 523(a)(2)(A)); *Hopper v. Everett (In re Everett)*, 364 B.R. 711, 720 (Bankr. D. Ariz. 2007); *see also Chivers*, 275 B.R. at 613-16 (analyzing development of narrow interpretation of term "financial condition" in § 523(a)(2)(B)). The Court finds nothing in the adversary complaint, nor anything in the Wyoming complaint, that supports the idea that any "financial statements" were involved at all. Gamble merely parrots the § 523(a)(2)(B) statutory language in the adversary complaint presently before the Court and fails to specify what written statement(s) are involved or when provided. However, the question at the moment is issue preclusion, and the Court restricts its ruling barring § 523(a)(2)(B) claims to the pre-April 28, 2000 period.

MEMORANDUM OF DECISION - 15

"outrageous, malicious, willful, and wanton." In dismissing this count on Rule 12(b)(6) grounds, the court stated that a claim for punitive damages is not an independent claim under Wyoming law. November Order at 21. Because this ruling was not based on burden of proof, that particular caveat therefore does not apply.

There is a more basic problem, however. Though "Count (21)" was dismissed, similar "willful and malicious" allegations permeated the Wyoming complaint.[15] Obviously no punitive damages were awarded. The lack of a sufficiently firm ruling on why no punitive damages were allowed makes it improper to preclude Gamble from relitigating whether Overton's conduct was "willful and malicious" under § 523(a)(6). Restatement §13 and § 27.[16]

### b. Causes dismissed following trial

The "tried" causes were Counts (1), (2), (5), (6), (7), (9), (12), and (14). The December Order dismissed on Overton's motion Counts (5), (6), and (9), and found Count (2) ("trust fund doctrine") did not need to be reached because Overton was liable for the debts of NPB on other grounds. The verdict was therefore on Counts (1) ("piercing the corporate veil") and (14) ("breach of

---

[15] For example, Gamble alleges in Count (5) ("fraud in the execution") and Count (6) ("fraudulent concealment") that Overton's conduct was "willful, wanton, intentional and/or malicious."

[16] The Court need not, therefore, discuss the specific standards applicable to "willful and malicious" under § 523(a)(6) nor attempt to compare them to similarly phrased but conclusory allegations in the Wyoming suit.

MEMORANDUM OF DECISION - 16

contract").

There are two aspects of this ruling that need to be evaluated. The first involves the dismissal of Count (5) ("fraud in the execution") and Count (6) ("fraudulent concealment"), with focus on whether burden of proof was involved. The second relates to Count (7) ("breach of fiduciary duties").[17]

### i.     Fraud and § 523(a)(2)

In dismissing the two remaining "fraud" claims, Counts (5) and (6), the Wyoming District Court stated:

> Plaintiff failed to demonstrate a prima facie case for fraud. Specifically, Plaintiff failed to show with any certainty that Defendant made a false representation upon which Plaintiff reasonably relied to his detriment. At the close of evidence, the record did not support the demanding burden of proof imposed on Plaintiff to demonstrate fraud.

*See* December Order at 3. It further stated:

> At the close of the evidence, the Court finds that Plaintiff failed to put forth viable claims for fraud and negligence and grants Defendant's oral Motion for Judgment as a Matter of Law.

*Id.* at 8.

On the one hand, the court's comment that Gamble "failed to demonstrate a prima facie case for fraud" and "failed to put forth viable claims for fraud" might suggest that the burden of proof was not involved. The court did not explain, though, what it meant in using the terms "prima facie" and "viable" and whether

---

[17] Dismissal of claims for "negligent hiring" and "accounting," Counts (9) and (12), do not relate to or import § 523(a) claims in the present case.

MEMORANDUM OF DECISION - 17

these "failures" of Gamble were based on his lack of any credible evidence.

The balance of the statement of the Wyoming federal court, which references the burden of proof, suggests that the "demanding burden" of clear and convincing evidence played a part in the court's decision. This is true even though the ruling and order as a whole might be read as indicating that it was not the burden that tripped up Gamble but, instead, it was his failure to present even a prima facie case, something that would be a precondition to weighing the evidence under any burden.

For these reasons, the Court concludes that application of issue preclusion to the two fraud counts that were tried, Counts (5) and (6), would be improper. Those counts, sounding in "fraud in the execution" and "fraudulent concealment," remain subject to litigation under the umbrella of § 523(a)(2)(A).

### ii    Breach of fiduciary duties and § 523(a)(4)

The cause of action for breach of fiduciary duties, Count (7), was also tried, because it had not been resolved in the pre-trial Rule 12/Rule 56 ruling.

The November Order expressly characterized Count (7) as a "claim in contract." November Order at 5 n.1. Though the December Order made no specific mention of Count (7), the court's prior characterization of that count, and the reasons articulated in the December Order for dismissing the fraud and negligence counts, leads to the conclusion that the breach of fiduciary duties contentions were subsumed within the jury verdict against Overton on the basis of

MEMORANDUM OF DECISION - 18

breach of contract (Count 14).

However, because Count (7) was so subsumed, there is no express or inherent resolution of Gamble's contention that the AIA agreement "created a fiduciary relationship between Gamble and Overton." Adv. Doc. No. 5 at ¶ 13. Moreover, for the purpose of this Motion, and litigation of the "fiduciary" issue before this Court, the federal definition of a fiduciary relationship under § 523(a)(4) must be applied.[18] The application of issue preclusion to Count (7) is therefore improper.

**CONCLUSION**

Based on the foregoing, the Court concludes Overton's motion for summary judgment will be granted as to all fraud claims under § 523(a)(2)(A) or (B) related to any conduct prior to April 28, 2000. Such issues presented in the instant litigation are barred from being relitigated by the doctrine of issue

//

//

---

[18] Federal law, not state law, determines a fiduciary relationship within the meaning of § 523(a)(4). *Cantrell*, 329 F.3d at 1125. The broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable for bankruptcy purposes. *Id.* (citing *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986)); *see also Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1189 (9th Cir. 2001). This Circuit has adopted a "narrow definition" of fiduciary for purposes of § 523(a)(4), and the "fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Cantrell*, 329 F.3d at 1125 (citing *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996)). This Court has recognized and applied these principles. *See, e.g.*, *Streibick v. Murrell (In re Murrell)*, 2004 WL 1895200 at *4-5 (Bankr. D. Idaho 2004).

MEMORANDUM OF DECISION - 19

preclusion.  Overton's motion, however, will be otherwise denied.

DATED: January 26, 2009



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 20